### J. R. BROOKS AND ANOTHER V. R. L. BREEDING.

1—Previous to the statute of January 11th, 1862 (Paschal's Digest, Art. 234), suit as prescribed in the act of 1848 (Article 229) was the only method by which liability could be fixed upon indorsers of bills of exchange or promissory notes, other than such as were " contracts between merchant and merchant, their factors and agents."

2—If a joint action against several assignors of a promissory note was inhibited by Art. 223, Paschal's Digest, that inhibition was abrogated by the subsequent enactment contained in Article 229. But it seems that Article 223 is applicable only to the non-negotiable instruments mentioned in Article 221—the word " sections " in the former article being a misprint for " section."

3—Errors in law committed in the rendition of a judgment by default are not waived by reason of failure to take exception to them in the court below; and such errors are available by motion in the court below for a new trial or in arrest of judgment, or by writ of error to this court.

4—On a note due January 1st, 1862, not being a contract between merchant and merchant, their factors and agents, the holder, without alleging cause for his delay, brought a single action in October, 1866, against the maker and two successive indorsers in blank, and judgment was rendered by default against all the defendants. The indorsers prosecute their writ of error. *Held,* that it was proper to sue both of the indorsers and the maker in a joint action; but *held further,* in view of the plaintiff's failure to sue within the prescribed terms of court after Provisional Governor Hamilton's proclamation abolished the stay laws and opened the courts, that the legal diligence requisite to charge the indorsers was not exercised by the plaintiff, and he was, therefore, not entitled to take judgment against them ; and as this error is patent on the face of the record, and is available on the writ of error, the judgment against the indorsers is reversed and the cause dismissed as to them.

ERROR from Colorado. Tried below before the Hon. Benjamin Shropshire.

The facts material to the rulings are stated in the opinion.

The defendants in the court below were Charles Kesler, maker of the note sued on, J. R. Brooks, the payee, who indorsed it in blank to J. R. Carlton, who indorsed it in blank to the defendant in error, plaintiff below. Brooks and Carlton, the indorsers, prosecute the writ of error.

*R. L. Foard*, for plaintiffs in error.—The note must be considered as indorsed by the plaintiffs in error, on the day of its date, to-wit: the 1st of August, 1861, as a blank or undated indorsement, will be referred to the date of the note, unless the contrary be averred and proved. (Hutchins v. Flintge, 2 Tex., 473; Carr v. Rowland, 14 Tex., 277.)

The court will, *ex officio*, take notice of the term to which the suit is brought, and whether to the first term of the court after the cause of action accrued. (Hutchins v. Flintge, 2 Tex., 473; Elliot v. Wiggins, 16 Tex., 596.)

Hence the Supreme Court knows, and will notice the fact, that the District Court of Colorado county was regularly held in the fall of 1865 and the spring of 1866—the courts having been opened after the war by the proclamation of Gov. Hamilton. (Smith v. Harbert, 30 Texas.)

The suit was not brought till the 8th of October, 1866, and there is no allegation in the petition that the maker of the note, Kesler, at the accrual of the cause of action, resided beyond the limits of the State, or in such part of the same that he could not be reached by the ordinary process of the law, or that he was notoriously insolvent, or that he is dead. (Paschal, Art. 225.) And since the suit was not brought at the first term of the court after the accrual of the right of action, or at the second term, showing good cause why suit was not instituted before the first term next after the accrual of the right of action, we hold that the plaintiffs in error are released from all responsibility on the note.

At the date of the note sued on there were two modes of fixing the liability of indorsers, one by bringing suit against the maker at the first or second term of the court after accrual

of the right of action, (Pas., Art. 229,) and the other by nota-
rial protest and notice of non-payment according to the usage
and custom of merchants. (Pas., Art. 232.) Only merchants
and their agents and factors could fix the liability of indorsers
in the latter mode, until the passage of the act of the 11th of
January, 1862, repealing the proviso to the 6th section of the
act, approved 20th March, 1848. (Pas., Art. 234; Smith v.
Harbert.)

Under the first mode the diligence required to charge the
indorser of negotiable paper is substituted for the demand and
notice required by the law merchant, (Sydnor v. Gascoigne, 4
Tex., 456,) and whatever would excuse a plaintiff from aver-
ring demand and notice, will excuse him from the use of the
diligence required by the statute. (Durrum v. Hendricks, 4
Tex., 495; Frosh v. Holmes, 8 Tex., 29; Fisher v. Phelps, 21
Tex., 554; Locke v. Huling, 24 Tex., 312; Payne v. Patrick,
21 Tex., 683.)

In the case of Smith v. Harbert, decided at the last Galveston
term of this court, and which is the leading and controlling
case upon the matters in dispute in this cause, Chief Justice
Morrill, in his able opinion, says that from the 7th of December,
1861, to the 11th of January, 1862, there was no way or
method of fixing the liability of an indorser of a promissory
note provided by law, unless the note was between merchant
and merchant.

Can the plaintiffs in error take advantage of these matters,
not having appeared in the court below, but let judgment go
against them by default? We think so, beyond any doubt.

"When the declaration is against the drawer or indorser of
a bill, or the indorser of a note, as their contract is only *con-*
*ditional* to pay if the acceptor of the one or the maker of the
other do not, it is necessary to aver a presentment for payment
to the drawee of the bill, or the maker of the note, on the day
it became due, and that he refused to pay, or could not be
found." (Chitty on Bills, p. 575, 11th American, from the 9th
London edition.)

Also, on page 593, the same author says : " A want of due presentment and notice of non-acceptance or non-payment appearing on the face of the declaration, can be taken advantage of by *general demurrer*, or motion in *arrest* of *judgment* or by *writ* of *error*."

In an action by the holder of a promissory note against the indorser, he must aver and prove demand and notice, and the want of each averment is not cured by verdict. (Knott v. Hicks, 2 Humphrey, 162.)

It has been expressly decided by our own court that the sufficient cause for not bringing the suit at the first term must be alleged and proved, and the failure of such allegation is ground of exception, arrest of judgment, or error. (Elliot v. Wiggins, 16 Tex., 597 ; Rhine v. Hart, 27 Tex., 95.)

*Webb & Jarmon*, for defendant in error.—The rulings in the case of Smith v. Harbert, decided at your last term, have been misapprehended in two particulars, viz: 1. It has been construed to hold that the liability of an indorser could not be fixed by suit, but only by protest.   2. That it requires protests on notes which *matured before* the act of 11th of January, 1862. We feel sure that the court never intended so to hold, and since we have seen the decision in Smith v. Dunlavy, administrator, made at your present term, we are confirmed in the opinion.

The act of 11th of January, 1862, requiring protests, could not be retroactive, and as the note sued on in this case matured on the 1st day of January, 1862, there was no need of a protest, and it was covered by the act of 7th of December, 1861, suspending collections upon notes and indorsements.

As to the other assignments, it is sufficient to answer that the defendants in the court below were duly cited and made default, and that it must be presumed that the District Court had before it all the evidence necessary to sustain its judgment, which indeed was the fact, and the plaintiffs in error can not now be heard to complain.

The word " sections " in Art. 223 of Paschal, was enacted

"*section*," and the article was intended alone to apply to notes and bills, *not negotiable.* Art. 229, passed eighteen years afterwards, shows that the design was to make "*every indorser*" (if a hundred) liable to the holder.

If, however, the holder could only pursue the *last* indorser, then the judgment can be reformed so as to protect the first indorser.

Lindsay, J.—By the amendment of the 6th section of the act of March 20th, 1848, prescribing the mode of fixing the liability of drawers and indorsers of bills of exchange and promissory notes, enacted on the 11th day of January, 1862, *all* holders of such bills and notes were placed upon the same footing, as to legal remedies, whether such instruments originated in contracts between merchant and merchant, their factors or agents or not. The same method of fixing the liability of the parties to such instruments are alike open to all, and the act of the 11th of January, 1862, was, no doubt, intended to relieve other holders than merchants from the difficulty of fixing such liability, in consequence of the general suspension of the collection of debts through the action of the courts. To construe Art. 223, Pas. Dig., as an inhibition to sue any but a single or the immediate assignor or endorser, renders it wholly incompatible with Art. 229, a statute of subsequent date. And if so, the rule of construction would be to give effect to the last expression of the legislative will. But it is apparent that Art. 223 was intended to operate only upon non-negotiable instruments, and that the word "sections," in the article, is a misprint for "section," referring directly to the preceding section in the same act for its proper interpretation; and thus rendering it consistent and harmonious with the act of the 20th of March, 1848, in Art. 229.

Upon the giving of the bond for costs required by the statute, when a party files his petition for the writ of error, it issues as a matter of right; and, upon the assignment of errors, this court is bound to notice them, whether they be matters of law

or matters of fact. If no statement of facts is presented, the court must notice the errors of law apparent upon the record. In judgments by default, a party may take advantage of any error in law, by motion for a new trial, in arrest of judgment, or by writ of error. The failure to take exception to the action of the District Court is no waiver of the right; the more especially when the error, as in this case, goes to the very foundation of the action, so far as the plaintiffs in error are concerned.

Since the amendment of the 6th section of the act of the 20th of March, 1848, all holders of such instruments have their option of two methods of fixing the liability of drawers and indorsers upon notes and bills which mature subsequent to the 11th January, 1862; notarial protest and notice for non-payment or suit as prescribed in Art. 229.

The note sued on in this case, falling due on the 1st of January, 1862, ten days before the passage of this amendatory act, the holder could only exercise due diligence by suit. The indorsements were in blank, and must be intended to have been made at the time of the execution of the note. The courts were open by the proclamation of the provisional governor for the institution of suits in September, 1865, and suit was not instituted until the 8th of October, 1866. No cause is alleged in the petition why suit was not brought to the first term of the court at which it could have been brought, which showing was indispensible to fix any legal liability at all upon the indorsers. The judgment of the court, therefore, upon the question of due diligence was an error of law patent upon the record, for the indorsers stood clearly absolved from all liability upon the note by operation of law.

The judgment is therefore reversed as to J. R. Brooks and J. R. Carlton, the indorsers, and the cause dismissed as to them.

Reversed and dismissed.