## A. STRATTON V. McKENZIE JOHNSTON.

1. The stay laws of the 7th of December, 1861, and of the 16th of December, 1863 (Paschal's Digest, Article 5125), did not repeal the act of the 20th of March, 1848 (Paschal's Digest, Article 229), which prescribes the mode of establishing the liabilities of drawers and indorsers of bills of exchange and promissory notes ; but those laws closed the courts during the war, and thus, in effect, suits for establishing the liability of indorsers of promissory notes and bills of exchange were suspended until the first term of court after the close of the war.

2. As the act of December 7th, 1861, had the effect to suspend the courts during the war, an action brought on a dishonored bill of exchange or promissory note to the first term of court after the close of the war, or to the second term, showing good cause for not bringing it to the first, will be regarded as sufficient diligence to bind the indorsers.

3. The act of January 11th, 1862 (Paschal's Digest, Article 234), merely gave an additional remedy to the one prescribed in Article 229 of Paschal's Digest, for fixing the liabilities of indorsers of bills of exchange and promissory notes, and the holder of indorsed paper which fell due between the 7th of December, 1861, and September, 1865, could have fixed the liability of the indorsers either by protest or by bringing suit to the fall term of 1865, or to the next term, by setting out a sufficient excuse for not having brought it to the previous term.

4. In an action against indorsers of a promissory note, brought to the second term of court after the maturity and dishonor of the note, the plaintiff alleged, as an excuse for not having brought suit to the first term, that he did not know of the time of holding the first term of court until it was too late to bring suit to that term, and that at the time of the holding of the first term of court the defendants were notoriously insolvent. *Held*, that ignorance of the time of the holding of court was no excuse, but that the notorious insolvency of the defendants, at the first term of court to which suit could have been brought, was a sufficient excuse, if true.   (Insall *v.* Robson, 16 Texas, 128 ; and Fisher *v.* Phelps, 21 Texas, 551, cited by the court.)

APPEAL from Washington. Tried below before the Hon. I. B. McFarland.

The facts of the case are sufficiently indicated in the opinion of the court. In 31 Texas, 693, a former appeal in this case is reported, under the style of Sledge *v.* Stratton.

*E. P. Hill*, for the appellant.

*Sayles & Bassetts*, and *Moore & Shelley* for the appellee.

OGDEN, J. We confess we have been unable to reconcile to our satisfaction the various rulings of this court upon the acts of the Legislature of the 7th of December, 1861, and the 11th of January, 1862, in regard to the necessary diligence in order to secure and fix the liability of an indorser of any bill of exchange or promissory note.

In the case of Smith *v.* Harbert the court says : " We therefore " consider that the Legislature required all parties and persons " holding notes or bills thus indorsed, to have the same pro- " tested from and after the 11th of January, 1862." In the indorsement cases, 31 Texas, 693, after reviewing to some length all the laws which have been passed by the Legislature of this State on the subject of indorsement, and the mode and manner of fixing the liability of indorsers, the court came to the conclusion, that between the 7th of December, 1861, and the 11th of January, 1862, there was no law in force whereby the liabilities of an indorser of a promissory note could be fixed, and the court decided that when a note became due on 1st of January, 1862, notwithstanding there was no law by which the liability of an indorser could then be fixed, yet, after the passage of the act of January 11th, 1862, that note might have been protested, and because the note was not protested, under a law which had passed ten days after the same became due, the indorser was thereby released.

The court further says : "After the 11th of January, 1862, " and until the courts were opened in 1865, the only way of

" fixing an indorser, was by procuring the indorsed note to be " regularly protested." From these decisions the conclusion is inevitable, that where a note became due after the 7th of December, 1861, and before the 11th day of January, 1862, it might be protested for non-payment after the latter date; and when a note became due between the 7th of December, 1861, and the opening of the courts in 1865, the only way by which the liability of an indorser could be fixed, was by protest; and that unless such note had been regularly protested, according to the rules and usages of the law merchant, the indorser would have been released from all liability.

If this be the proper construction to be given to those acts of the Legislature, then the appellant has no legal standing in this court, and the judgment of the District Court must be affirmed. But we think that the objects of the Legislature, and the acts referred to, are susceptible of a different construction to that given in the cases cited. Neither the act of the 7th of December, 1861, nor that of December, 1863, repealed the act of 1848, which provided for the fixing of the liability of indorsers by suit; but they suspended that act during the war, or, rather, they closed the courts during the war, so that no suit could be instituted to fix the liability of indorsers. The act of 1848 provides, that the holder of any bill of exchange or promissory note may fix the liability of any indorser, by instituting suit before the first term of the District Court to which suit can be brought, or before the second, and showing good cause why suit was not brought at the first term.

The note sued on became due on the first day of January, 1862, and, under the law of 1848, which had not been repealed, the holder could fix the liability of the indorser by bringing suit before the next term of the court to which such suit could be brought, and that term was held in the fall of 1865, and we can see no good reason for deciding that the holder of the note sued on in this cause might not have fixed the liability of the indorser, by bringing suit at that term.

On the 11th of January, 1862, a law was passed author-

izing the holder of a bill or note to fix the liability of the indorser by protest. This last act, in effect, gave an additional remedy, and the holder had the choice to protest his note at once, or wait until the courts were opened, and then bring his suit. The case of Brooks v. Breeding, 32 Texas, 752, was a suit on a note which fell due on the 1st of January, and the court says, that "the holder could exercise due diligence "only by suit." And in the cases of Smith v. Harbert, 30 Texas, 669 ; Jopling v. Turner, 32 Texas, 281 ; Porter v. Buckholts, 32 Texas, 487; and in Brooks v. Breeding, 32 Texas, 752, the court clearly recognizes the doctrine, that when a note became due in 1862, if suit were brought to the fall term of 1865, that would be the exercise of sufficient diligence to fix the liability of the indorser. And all the decisions referred to can be made to harmonize to a certain extent, by holding that the owner of the indorsed paper, which became due between December 7th, 1861, and September, 1865, might fix the liability of the indorser by bringing suit to the fall term, 1865, or by protest ; and we think this the more rational construction of the law.

The note sued on in this cause became due January 1st, 1862 ; it was not protested; suit was not brought at the first, but at the second term after the courts were opened ; and on the first hearing of the cause, no reason was shown why suit was not instituted at the first term, and this court, on appeal, decided that no sufficient diligence was shown to hold the indorser, and for that reason the judgment was reversed and the case remanded; and on the cause going back to the District Court, the plaintiff amended his petition by alleging, as a cause why suit was not brought at the first term to which suit could have been brought, that, at the time when suit could first have been brought, the makers of the note were notoriously insolvent, and, also, that he was ignorant of the time when the courts were opened in 1865, until it was too late to bring suit to that term, and, also, that defendant had recognized his liability to pay the judgment, and that he had, in fact, paid a part of the judgment. We think

that the evidence offered to the court, but ruled out, fails to show such a recognition of liability as would amount to a waiver of appellee's right to insist that he had been released. Nor are we inclined to the opinion that appellant's showing of his ignorance of the time when the courts were opened, a sufficient excuse for not instituting his suit at the fall term of the court in 1865.

But, under the authority of Insall v. Robson, 16 Texas, 128, and Fisher v. Phelps, 21 Texas, 551, we think that appellant's allegation of the notorious insolvency of the makers of the note at the first term of the court when the suit could have been brought, if true, would have been a sufficient cause for not bringing suit at that term; and we think the court erred in rejecting the depositions offered to establish that allegation. This error tends to vitiate all subsequent proceedings of the court in this cause, and, together with other errors herein pointed out, will require that the judgment be reversed, and the cause remanded.

                                        Reversed and remanded.